UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
YUNIS G. LIRA CACERES,

                Petitioner,

        - against-

CHRISTOPHER SHANAHAN, *in his official capacity as Field Office Director – NY, US Immigration and Customs Enforcement*,

                Respondent.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-00016 (OEM)

ORELIA E. MERCHANT, United States District Judge:

      Petitioner Yunis G. Lira Caceres ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). *See* Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, Dkt. 1 ("Petition" or "Pet."). ICE arrested Petitioner on September 3, 2025, in Uniondale, New York, and he is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Declaration of ICE Deportation Officer Michael O'Donohue ¶¶ 7, 9, Dkt. 10-1 ("O'Donohue Decl."). Petitioner challenges his detention as a violation of the Due Process Clause of the Fifth Amendment. Pet. at 10.[1] Petitioner additionally asserts that ICE lacks statutory authority to detain him as a Special Immigrant Juvenile Status ("SIJ") eligible youth, and that his continued detention violates the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the class action settlement in *Flores v. Barr*, 407 F. Supp. 3d 909 (C.D. Cal. 2019) ("*Flores*

---

[1] As the Petition includes several documents that are separately paginated, citations to the Petition and its attachments refer to the pagination automatically generated by the Court's CM/ECF docketing system and not the documents' internal pagination.

1

Settlement"). *Id.* Petitioner seeks immediate release from custody. *Id.* at 12. For the following reasons, the Petition is granted.

## BACKGROUND

Petitioner is a native and citizen of Honduras. *Id*. at 18. He entered the United States without inspection on or about February 15, 2023. *Id.* He was sixteen years old at the time of entry. *Id.* United States Customs and Border Patrol ("CBP") encountered Petitioner in the Rio Grande Valley, Texas, outside of a port of entry. O'Donohue Decl. ¶ 3. After indicating he was a native and citizen of Honduras, CBP served Petitioner with a Form I-200 Warrant for Arrest of Alien, as well as a Notice to Appear ("NTA"), charging him with removability pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id.* ¶ 3; Exhibit B, Dkt. 10-3 (attaching the 2023 NTA); Exhibit C, Dkt. 10-4 (attaching the 2023 I-200). Petitioner was also served with a Form I-286 Notice of Custody Determination, which reflected that he would be detained. Exhibit D, Dkt. 10-5 (attaching the 2023 I-286).

As Petitioner was 16 years old, he was considered an Unaccompanied Alien Child ("UAC"). O'Donohue Decl. ¶ 4. As a result, Petitioner was transferred to the custody of the Office of Refugee Resettlement ("ORR"), a division of the U.S. Department of Health and Human Services ("HHS"), on February 16, 2023. *Id.* In March 2023, he was released from ORR custody to a sponsor. *Id.* ¶ 5.

Since his release from ORR custody, Petitioner has resided with his brother in Uniondale, New York. Pet. at 18. He has been continuously present in New York since his release, and he

attended Uniondale High School. *Id.* Petitioner turned 18 in November 2024. O'Donohue Decl. ¶ 6.

On April 14, 2025, the Nassau Country Family Court appointed Petitioner's brother to be his legal guardian until his 21st birthday. Pet. at 29. That same day, the Family Court issued SIJ findings, determining that reunification with one or both his parents was not viable due to abuse, neglect, or abandonment and that return to Honduras was not in his best interest. *Id.* at 13, 31-32. Petitioner subsequently filed a Form I-360 Self-Petition for SIJ[2] with United States Citizenship and Immigration Services ("USCIS") on July 3, 2025. *Id.* at 19. That application is currently pending. *Id.* at 11.

On September 3, 2025, ICE encountered Petitioner while conducting an action concerning a third party. O'Donohue Decl. ¶ 7. ICE took Petitioner into custody and served him with a new Form I-200 arrest warrant. *Id.*; Exhibit F, Dkt. 10-7 (attaching the 2025 I-200). ICE also served and filed a new NTA. O'Donohue Decl. ¶ 7; Exhibit G, Dkt. 10-8 (attaching the 2025 NTA). The NTA charged the Petitioner as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General. Exhibit G, Dkt. 10-8. On September 24, 2025, ICE served an amendment to the NTA, adding an additional charge of removability under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Exhibit H, Dkt. 10-9 (attaching the 2025 NTA amendment).

Petitioner is currently detained at the MDC, and his case remains pending before the Immigration Court. O'Donohue Decl. ¶¶ 8, 9.

---

[2] "If you are in the United States and need the protection of a juvenile court because you have been abused, abandoned, or neglected by a parent, you may be eligible for Special Immigrant Juvenile (SIJ) classification. If SIJ classification is granted, you may qualify for lawful permanent residency (also known as getting a Green Card)." *Special Immigrant Juveniles*, USCIS, https://www.uscis.gov/working-in-US/eb4/SIJ (last visited Jan. 12, 2026).

## PROCEDURAL HISTORY

On December 30, 2025, Petitioner commenced this action in Southern District of New York by filing a petition for a writ of habeas corpus. *See* Pet. That same day, Judge Margaret M. Garnett issued an order to show cause why the Petition should not be granted, thereby setting a deadline for responsive papers and scheduling a hearing on the Petition for January 14, 2026. *See* Order to Show Cause, Dkt. 2. Judge Garnett additionally restrained Respondent from transferring Petitioner outside of the Southern District of New York pending a decision on the Petition. *Id.*

On December 31, 2025, the parties stipulated to the transfer of the action to the Eastern District of New York, as Petitioner is detained at the MDC in Brooklyn, New York. *See* Proposed Stipulation and Order of Transfer of Venue, Dkt. 4. Judge Garnett so ordered the stipulation and transferred the case on January 2, 2026. *See* Stipulation and Order of Transfer of Venue, Dkt. 5.

Upon transfer and reassignment to the undersigned, the Court issued an order to show cause why the Petition should not be granted, thereby directing Respondent to respond to the Petition by January 5, 2026, and ordering the parties to appear before the Court for a hearing on January 6, 2026, at 10:30 a.m. *See* Order to Show Cause, Dkt. 7 ("Order to Show Cause"). The Court additionally ordered Respondent not to remove Petitioner from this District "until further order of this Court." *Id.*

Respondent subsequently filed a motion for an extension of time to file a response to the Petition, see Letter from Respondent to the Court (Jan. 5, 2026), Dkt. 8, which the Court granted on January 5, 2026.

On January 7, 2026, "in lieu of a formal responsive memorandum of law," Respondent filed a five-page letter in response to the Petition. Letter from Respondent to the Court at 1 (Jan. 7, 2026), Dkt. 10 ("Letter Opposition" or "Letter Opp'n"). In filing the letter, Respondent sought

4

"to conserve judicial and party resources, and to expedite the Court's consideration of this case, in light of this Court's rulings on the principal legal issues in *J.U. v. Maldonado*, [25-CV-04836 (OEM), 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025),] and *Artiga v. Genalo*, [25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025)]." Letter Opp'n at 1.

The following day, the Court issued an order directing Respondents to file, by January 12, 2026, at 5:00 p.m., "a complete memorandum of law responding to all the arguments raised in the Petition and addressing the facts particular to Petitioner's case." Order, dated January 8, 2026. The Court additionally rescheduled the hearing to January 15, 2026, at 10:30 a.m. *Id*.

Respondent filed his memorandum of law by the Court-ordered deadline. *See generally* Memorandum of Law in Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Issued, Dkt. 11 ("Opposition" or "Opp'n").

The Court held a hearing on the Order to Show Cause on January 15, 2026, at 10:00 a.m. *See generally* Transcript of Civil Cause for Order to Show Cause Before the Honorable Orelia E. Merchant United States District Judge ("Transcript" or "Tr.").

## DISCUSSION

Although Petitioner argues that his SIJ eligibility, the TVPRA, and the *Flores* Settlement preclude his detention,[3] the Petition raises two principal issues: (1) whether Petitioner is detained

---

[3] Petitioner's arguments regarding SIJ eligibility, the TVPRA, and the *Flores* Settlement are unavailing. As noted by Petitioner at oral argument, SIJ classification is merely a pathway to permanent residency; it does not strip the government of removal power. Tr. at 19:13-24; *see also Benito Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025) ("The fact that petitioner has been given [SIJ] status has no effect on ICE's statutory and regulatory authority to detain him. Other federal courts have routinely recognized that SIJ status alone does not render an alien lawfully present in the country and thus does [not entitle] him to release, nor does it prevent the government from affecting his removal."); *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) (While "[t]he SIJ program offers aliens a multitude of benefits and protections, including the opportunity to seek lawful permanent resident status[,] . . . [i]n and of itself, though, an SIJ designation does not strip the U.S. government of all removal powers." (citation omitted)). Moreover, Petitioner was unable to provide the Court with any case law suggesting that SIJ status precludes removal or detention. Tr. at 9:10-13.

The TVPRA and the *Flores* Settlement also have no bearing on the lawfulness of Petitioner's detention, as he was 18 when taken into custody in September 2025. *See* 6 U.S.C. § 279(g)(2)(B) (defining a UAC as someone who "has not

under 8 U.S.C. § 1226 or 8 U.S.C. § 1225 and (2) whether Petitioner's due process rights have been violated. The Court addresses each in turn.

### A. Statutory Basis for Petitioner's Detention

Two federal statutes govern the detention of noncitizens[4] pending removal proceedings: 8 U.S.C. §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018). The parties dispute whether Respondent has the statutory basis to detain Petitioner, and, specifically, whether Petitioner is subject to the mandatory detention authority of § 1225(b)(2)(A). Tr. at 7:10-18. The Court begins with the relevant statutory and regulatory framework and then addresses its application to Petitioner's case.

#### 1. Statutory and Regulatory Framework of § 1225 and § 1226

The relevant statutory provisions, § 1225 and § 1226, are mutually exclusive, meaning a noncitizen may be subject only to one, not both. *J.U.*, 2025 WL 2772765, at *4; *Artiga*, 2025 WL 2829434, at *4.

##### a) Section 1225

Section 235(a) of the INA, codified at 8 U.S.C. § 1225, provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *See Jennings*, 583 U.S. at 287. Section 1225(b)(1) applies to aliens

---

attained 18 years of age"); 6 U.S.C. § 279(b)(1)(A) (transferring the responsibility for caring for UACs "who are in Federal custody by reason of their immigration status" to ORR, a component of HHS); 8 U.S.C. § 1232(c)(2)(A) (requiring that UACs in HHS custody be "promptly placed in the least restrictive setting that is in the best interest of the child"); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 205 n.1 (S.D.N.Y. 2020) (explaining that *Flores* Settlement defined "minor" as "any person under the age of eighteen (18) years who is detained in the legal custody of" HHS).

[4] The Court uses the terms "noncitizen" and "alien" interchangeably.

"initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *id*. (citing § 1225(b)(1)(A)(i)), and other aliens who receive special designation by the Attorney General, *id.* (citing § 1225(b)(1)(A)(iii)). Section 1225(b)(2) is a "catchall provision" that applies to all other applicants. *See id*.

Both §§ 1225(b)(1) and (b)(2) "mandate that aliens falling within their scope 'shall' be detained." *Jennings*, 583 U.S. at 300. Applicants for admission covered by § 1225(b)(1) are removed "without further hearing or review" under an expedited removal process, unless the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that alien is referred for an asylum interview. 8 U.S.C. §§ 1225(b)(1)(A)(i)-(ii). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" *Jennings*, 583 U.S. at 287 (quoting § 1225(b)(1)(B)(ii)). However, for applicants who do not assert such claims or whom the immigration officials "found not to have such a fear," this statutory provision requires that they "shall be detained . . . until removed." 8 U.S.C. §§ 1225(b)(1)(A)(ii), (B)(iii)(IV).

Turning to Section 1225(b)(2), it provides that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

Under both mandatory detention provisions of § 1225(b), noncitizens may, in the discretion of the Secretary of Homeland Security, be "parole[d] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 288. Once the purposes of parole have been achieved, "the alien shall forthwith return or be returned to the

7

custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

### b) Section 1226

Unlike the mandatory detention scheme of § 1225, detention under § 1226 is discretionary and provides the "default rule" for detaining and removing aliens "already present in the United States." *Jennings*, 583 U.S. at 303. It states that

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

8 U.S.C. § 1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." *Id*. §§ 1226(a)(1)-(2). Section 1226(c) contains several exceptions for persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 303.

### 2. Lawfulness of Petitioner's Detention

The record before the Court, including Respondent's treatment of Petitioner since his arrival in the United States in February 2023, establishes that Petitioner was detained pursuant to the discretionary authority under § 1226(a). The relevant facts are not in dispute: Petitioner entered the United States on or about February 15, 2023. Pet. at 18; O'Donohue Decl. ¶ 3. Petitioner was apprehended upon entry and placed in removal proceedings pursuant to an NTA that identified him not as "an arriving alien" but as "an alien present in the United States who has not been admitted or paroled." Exhibit B, Dkt. 10-3. Petitioner was also served with a Form I-200 Warrant for Arrest of Alien and a Form I-286 Notice of Custody Determination, which both indicated that he was to

be detained pursuant to Section 236 of the INA, codified at 8 U.S.C. § 1226. Exhibit C, Dkt. 10-4; Exhibit D, Dkt. 10-5. As Petitioner was 16 and therefore a UAC, he was transferred to ORR custody and subsequently released to a sponsor pursuant to 8 U.S.C. § 1232 and 6 U.S.C. § 279. O'Donohue Decl. ¶ 4-5; 6 U.S.C. § 279(b)(1)(A) (transferring the responsibility for caring for UACs "who are in Federal custody by reason of their immigration status" to ORR, a component of HHS); 8 U.S.C. § 1232(b)(3) ("Except in the case of exceptional circumstances, any department or agency of the Federal Government that has a[] [UAC] in custody shall transfer the custody of such child to the Secretary of [HHS] not later than 72 hours after determining that such child is a [UAC]."); 8 U.S.C. § 1232(c)(2)(A) (stating that a UAC may be placed in a "secure facility" within ORR or if available in the care of a "suitable family member."). Accordingly, Respondent's actions with respect to Petitioner's arrest, detention, and release in 2023 were taken pursuant to § 1226(a) and the provisions governing UACs. None of the records related to Petitioner's 2023 arrest, detention, or release make any reference at all to § 1225(b).

The same is true for Petitioner's current arrest and detention. Petitioner's arrest record is devoid of any reference to § 1225, and Respondent has not presented any records showing that Petitioner was detained pursuant to § 1225. *See* Exhibit F, Dkt. 10-7 (addressing officers "authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act"); *see also Hyppolite v. Noem*, 25-CV-4304 (NRM), 2025 WL 2829511, at *8 (E.D.N.Y. Oct. 6, 2025) (noting that the petitioner was detained under the discretionary authority of § 1226 as the Form I-200 authorizing the petitioner's detention was directed to immigration officers acting pursuant to sections 236 and 287 of the INA, and the statutory codification of INA § 236 is 8 U.S.C. § 1226).

9

*Ye v. Maldonado*, 25-CV-6417 (AMD), 2025 WL 3521298, at *5 (E.D.N.Y. Dec. 8, 2025) (concluding the same).[5]

Further, if Petitioner was arrested and detained pursuant to § 1225(b) in 2023, that authority would have mandated that he be detained or an individual determination made to grant him parole. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(c); *Biden v. Texas*, 597 U.S. 785, 806 (2022) (explaining that the authority of the Department of Homeland Security ("DHS") to parole applicants for admission is "not unbounded" because "DHS may exercise its discretion to parole applicants 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit'" (quoting 8 U.S.C. § 1182(d)(5)(A))). But nothing in the record indicates that Petitioner was granted parole within the meaning of § 1182(d)(5)(A). Rather, as a UAC, Petitioner was subject to a different statutory framework that facilitated his transfer to ORR and his release to a sponsor. *See* 6 U.S.C. § 279(b)(1)(A); 8 U.S.C. §§ 1232(b)(3), (c)(2)(A).

Moreover, parole under § 1182(d)(5)(A) is granted only on a *temporary* basis, and there is no evidence that any "expiration of [] time" was placed upon Petitioner's release to a sponsor. *See generally* 8 C.F.R. § 212.5(e)(1); 8 U.S.C. § 1232(c)(2) (outlining measures for safe and secure placements for UACs in HHS custody); *see also* 8 U.S.C. § 1182(d)(5)(A) (providing that parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled"); 8 C.F.R. 212.5(c) (stating that officials may, "after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, [8 U.S.C. § 1182(d)(5)(A)], any alien applicant

---

[5] Respondent argues that this record evidence "is not dispositive" and that they are free to change their opinion. Opp'n at 22. As another Judge in this District recently observed, Respondents are "free to argue" this point, but "the fact that the government took precisely the opposite position is a relevant factor for the Court's consideration." *Ye*, 2025 WL 3521298, at *5.

for admission, under such terms and conditions . . . as he or she may deem appropriate"). Additionally, Respondent does not contend that any notice was provided to Petitioner lawfully revoking any such alleged parole. *See id.* § 212.5(e)(2)(i); Letter Opp'n; Opp'n. Thus, the fact that Respondent did not comply with the procedures prescribed by § 1182(d)(5)(A) and its implementing regulations when releasing Petitioner in February 2023 or when detaining him in September 2025 supports the conclusion that Petitioner was not subject to § 1225(b)(2)'s mandatory detention, but rather to § 1226(a)'s discretionary detention.

In its opposition to the Petition and at oral argument, Respondent nonetheless argued that Petitioner was all along detained pursuant to § 1225(b)(2)(A)'s mandatory detention, despite its own records stating the contrary, because Petitioner has remained an "applicant for admission" to the United States as he is present in the country without having been admitted or paroled; because Petitioner has not demonstrated to an examining immigration officer that he is "clearly and beyond a doubt entitled to be admitted," his detention is mandatory under § 1225(b)(2)(A); and because amendments to the immigration laws support the conclusion that Congress did not intend for aliens like Petitioner to be treated better than other aliens. Opp'n at 9-23. In sum, Respondent argues that Petitioner has never lawfully entered the United States. *Id.* at 9.

Respondent's novel and expansive construction of § 1225(b)(2)(A) fails to withstand scrutiny because it disregards the plain meaning of that provision, would render § 1226 and a recent amendment to it superfluous, and is inconsistent with the Supreme Court's prior statutory interpretations. As discussed above, § 1225(a) defines an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States" and in turn, § 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

Respondent's argument that every noncitizen who has not been lawfully admitted into the United States continues to be a noncitizen "seeking admission" appears to equate "applicant for admission" with "seeking admission." But such a reading would render the phrase "seeking admission" in § 1225(b) superfluous—that is, it is not doing any work in the statutory text, which would violate the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("'[E]very clause and word of a statute' should have meaning." (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))). It is a basic canon of statutory interpretation that a statute should be construed as to give effect to all its provisions and that no part will be superfluous. *Corley v. United States*, 556 U.S. 303, 314 (2009). If an interpretation of one provision "'would render another provision superfluous,' courts presume that interpretation is incorrect." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 656 (E.D. Va. 2025) (quoting *Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010)). This presumption is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

Under Respondent's reading and application of § 1225(b)(2), nearly all noncitizens already in the United States, but not previously admitted or entered illegally, would be subject to § 1225(b)'s mandatory detention. If, as Respondent submits, § 1225(b)'s mandatory detention provision applies to all noncitizens who remain applicants for admission to the United States, this would render superfluous the mandatory detention provisions found in § 1226(c)(1)(A). Section 1226(c)(1)(A) provides that the "Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this

12

title," such as crimes of moral turpitude and offenses relating to controlled substances. 8 U.S.C. § 1226(c)(1)(A). Mandatory detention under § 1226(c) would therefore "be unnecessary if all persons who have not been admitted into the United States were already subject to § 1225(b)'s mandatory detention provisions." *Hasan*, 800 F. Supp. 3d at 656.

Furthermore, Respondent's reading does not square with a recent amendment of § 1226. In 2025, Congress enacted, and the President signed into law the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025). The Laken Riley Act amended § 1226 by adding § 1226(c)(1)(E), which makes noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions in 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed certain crimes. 8 U.S.C. § 1226(c)(1)(E). Under this new amendment, only when the inadmissibility and the criminal conduct criterion are both satisfied did Congress intend for mandatory detention to be triggered. *See Gomes v. Hyde*, 25-CV-11571 (JEK), 2025 WL 1869299, at *6 (D. Mass. July 7, 2025). Thus, Respondent's theory that § 1225 applies to noncitizens who are arrested on a warrant while residing in the United States would make § 1226(c)(1)(E)'s criminal conduct requirement superfluous, thereby "nullify[ing] a statute that Congress enacted" just last year. *Id*. at *7.[6] Respondents' reading contravenes Congress's intent that, except as provided in § 1226(c), § 1226(a)'s discretionary framework applies to all citizens arrested on a warrant while residing in the United States.

Finally, Respondent's interpretation of the statutory scheme does not comport with the Supreme Court's interpretation of the relationship between § 1225(b) and § 1226(a). The issuing officer of Petitioner's 2023 and 2025 NTAs did not deem Petitioner to be an "arriving alien" but

---

[6] In opposition, Respondents focus on the purported difference in "the avenue and governing standards by which the covered alien may be released" under § 1226(c) as opposed to § 1225(b)(2)(A). Opp'n at 21. This Court finds this unpersuasive for the same reasons articulated above: if Respondent's statutory interpretation argument were correct, there would be no need for the recent congressional amendment.

13

instead deemed him to be "present in the United States." Exhibit B, Dkt. 10-3; Exhibit G, Dkt. 10-8. The Supreme Court has long interpreted the language of noncitizens "seeking admission" to mean something different from those already present in the United States. *See Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."). In 2001, the Supreme Court explained in *Zadvydas v. Davis* that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." 533 U.S. 678, 693 (2001) (noting that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). More recently, in *Jennings*, the Supreme Court reaffirmed this principle, stating that § 1225(b) governs "aliens seeking admission into the country" whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings. 583 U.S. at 289. And, as recently as 2020, in *Department of Homeland Security v. Thuraissigiam*, the Supreme Court held that a petitioner arrested a mere 25 yards after crossing the border was still "at the threshold of initial entry," and although technically in the country, could still be treated as "an alien seeking initial entry." 591 U.S. 103, 107, 139 (2020). Contrary to Respondent's position, *Thuraissigiam* did not upend more than a century of precedent but rather held that noncitizens detained close to the border "shortly after unlawful entry" have not yet "effected an entry." *Id*. at 140. It continues to be the law of in this country that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Here, the Court finds that Petitioner "effected entry" into the United States since his

release in 2023, *see Thuraissigiam*, 591 U.S. at 140, and therefore was "already in the country," *see Jennings*, 583 U.S. at 289.

Respondent opposes this conclusion by directing the Court to four recent nonbinding decisions in this Circuit: *Chen v. Almodovar*, 25-CV-8350 (MKV), 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025); *Liang v. Almodovar*, 25-CV-09322 (MKV), 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025 *Candido v. Bondi*, 25-CV-867 (JLS), 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025); and *Chen v. Almodovar*, 25 Civ. 9670 (JPC), 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026). *See* Letter Opp'n at 3 n.2; Tr. at 4:10-25. These decisions, however, are outliers, and the majority of Courts in this Circuit and elsewhere have adopted the reasoning stated herein and rejected Respondent's position. *See, e.g.*, *Crespo Tacuri v. Genalo*, 25-CV-06896 (NCM), 2026 WL 35569, at *3 (E.D.N.Y. Jan. 6, 2026) ("The judges that have considered this issue within the Eastern District of New York in the last four months have unanimously rejected the government's interpretation."); *Barco Mercado v. Francis*, 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting at the time that the government's "new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."). Moreover, Respondent's cited authority is not binding on this Court.

Respondent also relies on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), a recent Board of Immigration Appeals ("BIA") decision, to support the proposition that Petitioner is an "applicant for admission" and therefore can be detained pursuant to § 1225, regardless of how many years he has been present in the United States. Opp'n at 11-12. In that case, the BIA

15

held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to § 1225(b)(2)(A). *Hurtado*, 29 I. & N. Dec. at 227. While the BIA decision might provide helpful guidance, this Court is not bound by it. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86, 400-01 (2024) (Interpretation of the meaning of a statute belongs to the "independent judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities."). Further, the Court is particularly disinclined to follow such decisions when the BIA made prior pronouncements to the contrary, as is the case here. *See Hurtado*, 29 I. & N. Dec. at 225 n.6 ("We acknowledge that for years Immigration Judges have conducted [§ 1226(a)] bond hearings for aliens who entered the United States without inspection."); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 222 (D. Mass. 2025) (discussing prior BIA decisions); *see also Loper Bright*, 603 U.S. at 386 ("'[T]he longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" (citations omitted)); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

Accordingly, the Court finds that, under the circumstances presented here, Petitioner may only be subject to detention as a matter of discretion under § 1226(a).

### B. Petitioner's Due Process Claim

The Court now turns to whether ICE's detention of Petitioner violates his due process rights. The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical

restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Valdez v. Joyce*, 25 Civ. 4627 (GBD), 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) ("Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." (citing *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018)); *Lopez*, 2018 WL 2932726, at *12 ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")).[7]

The Second Circuit has held that the *Mathews v. Eldridge* three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

---

[7] Respondent argues that Petitioner's detention comports with due process because he is "treated for constitutional purposes as if stopped at the border." Opp'n at 13-16. However, this "entry fiction" doctrine, *id.* at 13 n.5, is neither relevant to the statutory analysis set out above nor applicable to the due process analysis. As other courts in this Circuit have explained, the entry fiction doctrine "dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted." *J.G.O. v. Francis*, 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025). Whatever procedure Congress authorized is, under this doctrine, due process. *Id.* Here, however, the question is what process Congress authorized, so "even assuming that the entry fiction would apply," it does not affect the "*statutory* analysis." *Id.*

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

To the extent that Respondent argues that Petitioner's detention does not violate his due process rights because he was subject to mandatory detention, the Court has rejected that premise. Respondent does not dispute that, to the extent DHS seeks to detain a noncitizen pursuant to the discretionary authority provided by § 1226(a), ICE must follow certain procedural safeguards.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner contends that he was wrongfully detained as he has no criminal history and poses no danger or flight risk. Pet. at 7. Petitioner's liberty interest is clearly established. *See Valdez*, 2025 WL 1707737, at *3.

With respect to the second prong of the *Mathews* test, the record unequivocally demonstrates that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in September 2025. Tr. at 27:21-23 (confirming that no individual determination was made as to Petitioner before his detention in September 2025); *id.* at 29:2-15 (noting that a bond hearing before an Immigration Judge was denied). Additionally, Respondent confirmed that other than Petitioner's 18th birthday and loss of UAC status,[8] there was no change in circumstances from the time ORR released Petitioner to a sponsor in March 2023 to his re-arrest and detention in September 2025. *Id.* at 28:1-9. Thus, the risk of erroneous deprivation of

---

[8] While the statutory framework governing UACs dictates how they are to be treated while in government custody, nothing in that framework suggests that UACs released to sponsors are subject to mandatory detention upon their 18th birthday. *See generally* 8 U.S.C. § 1232; 6 U.S.C. § 279.

Petitioner's liberty interest is high. *See Lopez*, 2018 WL 2932726, at *11 (finding a risk of erroneous deprivation where UAC petitioner was re-detained absent a change in circumstances, procedure, or evidentiary findings).

As to the last *Mathews* prong, "the Attorney General's discretion to detain individuals under 8 [] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez*, 2025 WL 1707737, at *4 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, there is nothing to suggest that Petitioner is a flight risk or a danger to the community. In fact, Petitioner's release to a sponsor in 2023 reflects a previous determination that he was neither. *See Lopez*, 2018 WL 2932726, at *11 ("ORR's release of [petitioner] to his mother required a determination that he was neither a danger to himself or others and that it was appropriate for him to reside with his mother under a sponsorship agreement."); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017) ("[T]he minor's placement with the sponsor reflects a determination by the federal government that the minor is neither dangerous nor a flight risk[.]"). Additionally, as noted in the Petition, Petitioner has a court-appointed guardian, no criminal history, and a stable residence. Pet. at 7. Simply put, there is no evidence that Petitioner posed a risk of flight or danger to the community sufficient to justify his detention. Thus, Respondent has failed to show a significant interest in Petitioner's continued detention.

Respondent's ongoing detention of Petitioner with no process at all, much less prior notice; no showing of changed circumstances; and no opportunity to respond violates his due process rights. *See Valdez,* 2025 WL 1707737, at *4; *Lopez*, 2018 WL 2932726, at *15. Given the deprivation of Petitioner's liberty, formerly granted and approved by the government, the absence

19

of any deliberative process prior to or contemporaneous with the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Petition is granted. Respondent is ordered to immediately release Petitioner from custody. By January 29, 2026, Respondent shall certify compliance with this Order by filing on the docket and noting specifically that Petitioner has been released.

SO ORDERED.

                                                                                               /s/
                                                                           ORELIA E. MERCHANT
                                                                           United States District Judge

January 28, 2026
Brooklyn, New York